***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and the subject matter.
2. At all times relevant to this claim, an employer-employee relationship existed plaintiff and defendant — employer.
3. Michigan Mutual Insurance Company is the carrier for defendant-employer.
4. Defendants have denied liability and plaintiff has not received any disability benefits, nor have defendants paid for any medical treatment since plaintiff was attacked by his co-employee.
5. A packet of medical records was admitted into evidence as Stipulated Exhibit 1 and an Industrial Commission Form 22 was admitted into evidence as Stipulated Exhibit 2. Plaintiff's Exhibits 1 through 5 include: (1) an Injury Investigation Report, (2) a Corrective Counseling Report, (3) an Industrial Commission Form 61, (4) an Industrial Commission Form 28B and (5) an Industrial Commission Form 18. Defendants' Exhibits 1 through 5 include: (1) Plaintiff's Recorded Statement, (2) an Injury Investigation Report, (3) Plaintiff's Answers to Interrogatories, (4) an Industrial Commission Form 19 and (5) a Payroll Change Notice. In addition, the parties entered into a post-hearing stipulation to the following days worked and wages earned by the plaintiff since the date of injury:
Employer Dates Wages
White's Tire 9/12/00-1/5/01 $410.00
SOI-22 of NC, Inc. 12/29/00-3/21/01 $3,621.00
Turner Plumbing 3/27/01-5/21/01 $2,805.75
Williamson Produce 6/19/01-7/17/01 $1,573.00
 Action Temporaries of Wilson 7/24/01-10/11/01 $3,907.38
 ***********
Based upon all the competent evidence of record, the Full Commission finds as fact and concludes as a matter of law the following:
 FINDINGS OF FACT
1. Plaintiff was 45 years old at the time of the hearing before the Deputy Commissioner. He worked intermittently as a truck tire changer over the course of a ten-year period for defendant-employer at its service center in Rocky Mount. Plaintiff was most recently hired by defendant-employer in October 1999. Plaintiff worked as a truck tire changer until 8 May 2000, at which time he left his employment with defendant-employer due to back pain and never returned to work there.
2. In his capacity as a truck tire changer, plaintiff was required to perform various duties. These included making roadside service calls, mounting and dismounting tires in the truck tire shop at defendant-employer's service facility, and various other inventory and cleaning duties. The truck tires that plaintiff was required to lift weighed up to 125 pounds. During the course of his employment with defendant-employer, plaintiff obtained a certification as a truck tire changer.
3. At some point in Spring 2000, plaintiff was involved in an altercation with another co-worker, Johnnie King. On that morning, plaintiff was loading tires onto the back of a truck as part of his regular duties in the truck tire shop. As plaintiff walked to the rear of the shop, Johnnie King, a supervisor in defendant-employer's car tire shop, asked plaintiff to dismount and balance the tires on an ambulance that Mr. King had just backed into the rear of the truck tire shop. The tires had not been balanced properly by some employees in the car tire shop. Plaintiff refused to do so as he was not certified nor allowed by his direct supervisor, Randy Smith, to do this type of work. When plaintiff refused to comply with Mr. King's demand, Mr. King threatened "to whoop [plaintiff's] butt." Following the exchange, plaintiff started to walk away and Mr. King came up behind him. Plaintiff turned back towards Mr. King and Mr. King grabbed plaintiff by the throat and picked him up in the air. Plaintiff was unable to breathe and he began kicking Mr. King. Mr. King threw plaintiff to the concrete floor where plaintiff landed flat on his back.
4. After the attack, plaintiff reported the altercation to Jeff Foster, the manager on duty at the time, and later that day to Randall Smith, the service manager. According to plaintiff, the store's secretary was also present when he reported the incident to Jeff Foster. Plaintiff did not report having any injuries as a result of this incident at that time. After reporting the incident, plaintiff left the store to calm down. He returned after a few hours and worked the remainder of his shift.
5. The date of the altercation between plaintiff and Mr. King is disputed by the parties. Plaintiff's supervisor, Mr. Smith, maintains that the incident took place on 8 February 2000, which is the date on a Corrective Counseling Report that he completed regarding the incident. The evidence does not explain, however, how Mr. Smith used a form which states on its face that it was revised in March 2000 to complete a report on 8 February 2000. The Form 19 Report of Injury states that the date of the altercation was 13 March 2000. The Form 61 Denial of Workers' Compensation Claim filed by defendant-carrier states the date of injury was 13 March 2000, as does the Form 28B Report of Compensation Paid filed by defendant-carrier.
6. Plaintiff is uncertain of the date of the incident, but believes that the incident took place either in late March or in early to mid-April 2000. Plaintiff testified at the hearing before the Deputy Commissioner that he could not remember the exact date of the incident at work, but it was somewhere in April. Plaintiff noted on his Form 18 that the day of injury was "April 15, 2000." In a recorded statement taken by defendants on 18 October 2000, plaintiff stated that his injury happened "somewhere in the middle of April." Randall Smith testified that he knows plaintiff's accident did not happen on 15 April because he was away from the office on an eight-day company trip to Jamaica on that date. He further testified that Sarah Joyner, defendant-employer's secretary, started work the day he left for Jamaica, which was a Sunday. Ms. Joyner testified that she started working for defendant-employer on 6 April 2000, which would have been on a Thursday. Given the eight day length of Mr. Smith's trip, if he left on Thursday, 6 April, he could have returned to work by 14 April. If he left on Sunday, 9 April, he could have returned to work by 17 April. Plaintiff testified that he believed the incident happened around mid-April, although it could have been earlier.
7. Based upon the greater weight of the evidence, the Full Commission finds that the incident between Mr. King and plaintiff occurred in mid-April, between 14 April and 18 April 2000.
8. After mid-April 2000, plaintiff continued to perform his normal duties as a truck tire changer. During the weeks following the incident at work, plaintiff was sore and had increasing pain in his neck and back. Plaintiff testified that he reported his pain to his supervisor, Randall Smith, on several occasions, and that Mr. Smith gave him "pain pills" and encouraged him to return to work. Plaintiff continued to work because he "had to." Mr. Smith testified that plaintiff did not appear to have any physical problems or be in any physical pain during this time and did not complain of any back pain; however, the Full Commission finds plaintiff's testimony to be more credible than that of Mr. Smith.
9. Mr. Smith also testified that on the morning of Friday, 5 May 2000, plaintiff requested and got permission to be off that afternoon in order to get a head start on remodeling a bathroom in his home. This work included replacing the flooring, tile, and fixtures in the bathroom. Plaintiff testified that he did leave work early on 5 May 2000, but the purpose was to take his son to the hospital for an appointment. Plaintiff specifically denied having done any remodeling work. The Full Commission finds plaintiff's testimony in this regard to be more credible than that of Mr. Smith.
10. On Monday, 8 May 2000, plaintiff reported to work with severe back pain. Mr. Smith recommended that plaintiff seek medical treatment if he needed to do so.
11. Plaintiff sought treatment with chiropractor Dr. Mark Jensen at Hammer Chiropractic that same day. Plaintiff complained of neck, arm, mid back, and low back pain as well as headaches. Plaintiff noted on the initial report that he was injured at work. Plaintiff related his injuries to his normal duties as a truck tire changer and specifically to the fact that he was required to lift heavy tires all day long. Plaintiff did not relate his injuries, and specifically his back pain, to his previous altercation with Mr. King when he saw Dr. Jensen on 8 May 2000, but he did report an increase in pain over the last couple of weeks causing difficulty in performing his work duties. Dr. Jensen's examination revealed a decrease in plaintiff's range of motion in his neck and low back. He also found segmental dysfunction with pinched nerves and some neuritis, and misalignment at C2, C5, L5 and both iliums. Dr. Jensen opined that plaintiff's condition was not consistent with degenerative changes.
12. Dr. Jensen recommended conservative treatment modalities for plaintiff's symptoms, but plaintiff sought a second opinion. Dr. Jensen obtained an appointment for plaintiff with Dr. Nelson T. Macedo, a neurological surgeon. Dr. Jensen gave plaintiff an out-of-work note for 8 May 2000 through 10 May 2000, and provided plaintiff with a note which stated his opinion that the heavy lifting required by plaintiff's employment with defendant-employer was the cause of plaintiff's strain and neurological problems.
13. Shortly after 8 May 2000, plaintiff attempted to file a written claim for his back injury with defendant-employer. Mr. Smith and Sarah Joyner attempted to take an Injury Investigative Report. After a few questions, plaintiff indicated that he wanted to take the paperwork home to complete. Plaintiff returned those documents to defendant-employer a couple of weeks later. Plaintiff noted on the report that the accident occurred when he was thrown on a concrete floor by a co-worker, Johnny King, and due to heavy lifting by himself.
14. Plaintiff did not return to work for defendant-employer after 8 May 2000. Plaintiff initially kept in contact with defendant-employer about his back condition and his ability to work. Defendant-employer offered to assist plaintiff in applying for short-term disability benefits, but plaintiff never followed up on doing so. Eventually, plaintiff was officially removed from defendant-employer's payroll on 1 July 2000.
15. Plaintiff did not work from 8 May 2000 until approximately 12 September 2000, at which time he returned to work at White's Tire Service as a tire changer. Plaintiff worked off and on for White's Tire Service until early January 2001. Plaintiff also worked intermittently for other employers, both during and after his employment with White's Tire, earning various wages. These included jobs as a sales clerk at a few convenience stores and a job as a backhoe operator for Turner Plumbing. Plaintiff worked until 11 October 2001.
16. After his visit with Dr. Jensen, plaintiff treated with several physicians and medical providers for his complaints of low back and bilateral leg pain over the course of the ensuing months. This included treatment with Dr. Ira M. Hardy at Center for Scoliosis and Spinal Surgery, Dr. Shepard Rosenblum at Boice-Willis Clinic, P.A., Dr. J. Th. Bloem at Bloem Orthopaedic Center, and Dr. Tom S. Rand at Wilson Orthopaedic Surgery and Neurology Center.
17. Under the direction of Dr. Hardy, MRIs were taken of plaintiff's cervical, thoracic and lumbar spine regions on 16 August 2000. Dr. Hardy reviewed the films and found no evidence of instability. Plaintiff's MRIs were normal, with some degenerative changes at the facet joints at L4-L5 and a small central disk bulge at L5-S1, with no evidence of nerve root compression. Dr. Hardy opined that plaintiff's pain was the result of a strain problem rather than a disk problem. A whole body bone scan was performed on 28 August 2000, and Dr. Hardy found no evidence of increased uptake in any of the vertebral bodies in the thoracic region. Dr. Hardy opined that operative treatment was not warranted and that plaintiff did not have a compression fracture.
18. On or about mid-April 2000, plaintiff suffered an injury by accident arising out of and in the course of his employment with defendant-employer. Plaintiff's injury resulted in multiple areas of muscle strain to his back. As of 28 August 2000, plaintiff was capable of returning to work earning the same or greater wages. Dr. Ira Hardy noted that plaintiff could return to work and no restrictions were given. Plaintiff did in fact find employment as a tire changer on 12 September 2000.
19. Plaintiff presented to Dr. Shepard Rosenblum on 11 December 2000. Dr. Rosenblum reviewed plaintiff's MRIs and found "no frank disk herniation." He diagnosed plaintiff with multiple areas of back strain. After continuing treatment of steroids, physical therapy and time, Dr. Rosenblum had nothing further to recommend to plaintiff except a referral to a spine surgeon. He released plaintiff from his care on 17 May 2001.
20. On 24 July 2001, plaintiff sought treatment with Dr. Leonard D. Nelson at Raleigh Orthopaedic Clinic for his complaints of lower back and bilateral leg pain. Dr. Nelson's examination was essentially unremarkable and he diagnosed plaintiff with mechanical low back pain and recommended a lumbar MRI to rule out spinal stenosis. The MRI returned within normal limits and Dr. Nelson indicated on 2 August 2001, that he saw no evidence of any acute injury or neurologic impingement. Dr. Nelson also indicated that plaintiff could return to his job as a plumber.
21. On 24 August 2001, plaintiff returned to Dr. Nelson with "fairly severe mechanical back pain. Dr. Nelson ordered discograms at L3-4, L4-5 and L5-S1. On 20 September 2001, Dr. Nelson informed plaintiff that the discograms revealed "L5-S1 HNP and degenerative disc disease. During his deposition testimony Dr. Nelson testified that plaintiff just had a painful disk at L5-S1; the disk was not herniated or bulging. Surgical options were discussed and plaintiff considered possible spinal fusion surgery. On 4 October 2001, plaintiff elected to proceed with the surgery. He was given an out-of-work note for an indefinite period of time. Decompression and fusion of L5-S1 with Steffee plate surgery was performed by Dr. Nelson on 6 November 2001.
22. Plaintiff continued to treat post-operatively with Dr. Nelson during which time Dr. Nelson ordered a lumbar myelogram and EMG/NCV studies, both of which returned negative. On 29 August 2002, Dr. Nelson released plaintiff at maximum medical improvement with a 30% permanent partial disability rating to his back and permanent work restrictions within the guidelines of a Functional Capacity Evaluation that was performed per his recommendation on 13 August 2002.
23. Plaintiff testified at the hearing before the Deputy Commissioner that since the surgery he remains unable to work and suffers debilitating pain 24 hours per day.
24. The results of the 13 August 2002 FCE indicate that plaintiff's activities should be limited as follows: no squatting, occasional stair climbing, 4.2 pounds carrying, 4.5 pounds pushing and pulling, and 9.3 pounds lifting from desk to chair.
25. Dr. Nelson opined that while it would be rare for an injury from the type of acute trauma that plaintiff described to produce long-term lower back pain, he also opined that plaintiff's mid-April 2000 injury might have caused the lower back pain for which he sought treatment in July 2000. Dr. Nelson also testified that the diagnostic studies and surgery did not provide information "one way or the other" as to whether plaintiff's condition was chronic in nature or the result of a work place injury. Based upon the prior MRIs and the whole body scan taken of plaintiff in August 2000, the medical records of Drs. Hardy and Rosenblum and other evidence presented, the Full Commission finds that plaintiff's surgery and resulting disability were not causally related to his mid-April 2000 injury by accident.
26. Plaintiff testified that he earned $9.00 per hour while working for defendant-employer. Pursuant to the Form 19 filed by defendant-employer, the Full Commission finds that plaintiff's average weekly wage was $380.00, which yields a weekly compensation rate of $253.34.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable work-related injury due to a specific traumatic incident in mid-April 2000, when he was involved in a physical confrontation with a co-worker and suffered an injury to his back. Plaintiff's injury resulted in multiple areas of muscle strain to his back. N.C. Gen. Stat. § 97-2(6).
2. As of 28 August 2000, plaintiff was capable of returning to work earning the same or greater wages. Defendant-employer had terminated plaintiff's employment; however, plaintiff found employment elsewhere as a tire changer on 12 September 2000. Russell v. Lowe's Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
3. As a result of his work place injury, plaintiff was disabled from 8 May 2000 until 12 September 2000. Plaintiff is entitled to temporary total disability compensation in the weekly amount of $253.34, beginning on 8 May 2000, and continuing until 12 September 2000. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendants pay for all medical treatment incurred through 11 December 2000, which is related to his compensable injury. Plaintiff's treatment with Dr. Nelson and the resulting surgery were not related to his compensable injury. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation in the weekly amount of $253.34, beginning on 8 May 2000 and continuing until 12 September 2000. That amount has accrued and shall be paid to plaintiff in a lump sum, subject to attorney's fees approved below.
2. Defendants shall pay for all plaintiff's medical treatment incurred through 11 December 2000 which is related to his compensable injury.
4. An attorney's fee of 25% of the compensation awarded in Paragraph 1 above is hereby approved for plaintiff's counsel. Defendants shall pay directly to plaintiff's counsel one fourth of the lump sum award due to plaintiff.
5. Defendants shall pay the costs of this action.
This the _______ day of August, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN